# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

Residential Funding Company, LLC,

        Plaintiff,

    v.

Broadview Mortgage Corporation,

        Defendant.

———————————————————

Residential Funding Company, LLC,

        Plaintiff,

    v.

First Equity Mortgage Bankers, Inc.,

        Defendant.

———————————————————

Residential Funding Company, LLC,

        Plaintiff,

    v.

Central Pacific Homeloans, Inc., Central Pacific
Bank, and Central Pacific Financial Corporation,

        Defendants.

———————————————————

Residential Funding Company, LLC,

        Plaintiff,

    v.

Lenox Financial Mortgage Corp.,

        Defendant.

**MEMORANDUM OPINION
AND ORDER**

Civil Nos.    13-3463 ADM/SER
             13-3473 ADM/TNL
             13-3476 ADM/JSM
             13-3495 ADM/FLN
             13-3521 ADM/LIB
             13-3528 ADM/TNL

———————————————————————

Residential Funding Company, LLC,

          Plaintiff,

    v.

Wells Fargo Bank, N.A.,

          Defendant.

———————————————————————

Residential Funding Company, LLC,

          Plaintiff,

    v.

National Bank of Kansas City,

          Defendant.

————————————————————————————————————

Donald G. Heeman, Esq., David L. Hashmall, Esq., Jessica J. Nelson, Esq., and Richard R. Voelbel, Esq., Felhaber Larson, Minneapolis, MN; Peter E. Calamari, Esq., David Elsberg, Esq., Isaac Nesser, Esq., Quinn Emanuel Urquhart & Sullivan, LLP, New York, NY; and Jeffrey A. Lipps, Esq., Carpenter Lipps & Leland LLP, Columbus, OH, on behalf of Residential Funding Company, LLC in Civil Nos. 13-3463, 13-3473, 13-3476, 13-3495, and 13-3528.

Edward P. Sheu, Esq., and Kyle R. Hardwick, Esq., Best & Flanagan LLP, Minneapolis, MN; Peter E. Calamari, Esq., David Elsberg, Esq., and Isaac Nesser, Esq., Quinn Emanuel Urquhart & Sullivan, LLP, New York, NY; and Jeffrey A. Lipps, Esq., Carpenter Lipps & Leland LLP, Columbus, OH, on behalf of Residential Funding Company, LLC in Civil No. 13-3521.

J. Robert Keena, Esq., and Carol R.M. Moss, Esq., Hellmuth & Johnson, PLLC, Edina, MN; and James W. Brody, Esq., and Greg W. Chambers, Esq., American Mortgage Law Group, PC, Novato, CA, on behalf of Broadview Mortgage Corporation, Central Pacific Homeloans, Inc., Central Pacific Bank, Central Pacific Financial Corporation, and Lenox Financial Mortgage Corporation.

Joseph W. Anthony, Esq., Amelia R. Selvig, Esq., and Brooke D. Anthony, Esq., Anthony Ostlund Baer & Louwagie, PA, Minneapolis, MN; and Philip R. Stein, Esq., Bilzin Sumberg Baena Price & Axelrod LLP, Miami, FL, on behalf of First Equity Mortgage Bankers, Inc.

Marc T.G. Dworsky, Esq., Richard C. St. John, Esq., Todd J. Rosen, Esq., and Christian K. Wrede, Esq., Munger, Tolles & Olson LLP, Los Angeles, CA, and San Francisco, CA; and Richard T. Thomson, Esq., and Amy L. Schwartz, Esq., Lapp, Libra, Thomson, Stoebner & Pusch, Chartered, Minneapolis, MN, on behalf of Wells Fargo Bank, N.A.

Nancy A. Temple, Esq., and Scott N. Gilbert, Esq., Katten & Temple LLP, Chicago, IL; and Seth Leventhal, Esq., Leventhal PLLC, Minneapolis, MN, on behalf of National Bank of Kansas City.

---

# I.  INTRODUCTION

On June 10, 2014, the undersigned United States District Judge heard oral argument on Defendants Broadview Mortgage Corporation, First Equity Mortgage Bankers, Inc., Central Pacific Homeloans, Inc., Central Pacific Bank, Central Pacific Financial Corporation, Lenox Financial Mortgage Corp.,Wells Fargo Bank, N.A., and National Bank of Kansas City's Motions to Dismiss the complaints filed against them by Plaintiff Residential Funding Company, LLC ("RFC").  RFC initiated six separate actions against Defendants, and Defendants separately moved to dismiss in each action.[1]  Given the significant overlap in factual and legal issues, the parties agreed to a consolidated hearing on the motions.  For the reasons stated below, Defendants' motions are denied.

# II.  BACKGROUND

Each of these six actions arose based on separate but similar sets of transactions between RFC and Defendants.  Before it declared bankruptcy in May 2012, RFC was "in the business" of buying and securitizing residential mortgage loans.  Am. Compl. [Broadview Dkt. No. 37]

---

[1]  The respective dockets will be cited as [Broadview Dkt. No. 1], [First Equity Dkt. No. 1], [Central Dkt. No. 1], [Lenox Dkt. No. 1], [WF Dkt. No. 1], and [NBKC Dkt. No. 1].

("Broadview Compl.") ¶ 2.[2]   RFC purchased these mortgage loans from various "correspondent lenders," including Defendants, who had primary responsibility for underwriting the loans.   RFC then "pooled" loans with similar characteristics together, and sold the bundled loans into securitization trusts.   The loans served as collateral for the trusts' securitized investments (commonly referred to as "residential mortgage-backed securities" or "RMBSs").   RFC sold the RMBSs to investors, and it also occasionally sold pooled loans to "whole loan" investors.   Id. ¶¶ 21-22.

Defendants sold numerous mortgage loans to RFC in accordance with different iterations of the "Client Contract," which in turn incorporated different iterations of the voluminous "Client Guide."   Although multiple versions applied to the transactions at issue, RFC contends the applicable Client Contracts and Client Guides have the same material terms concerning loan quality.   Id. ¶ 18.   Through the Client Guides, Defendants made numerous representations and warranties to RFC regarding the residential loans it sold.   Among other representations, Defendants agreed they had: verified the accuracy of the information used by borrowers to obtain the loans; ensured the proper completion and execution of loan forms; complied with applicable laws; determined that no default or other breach of loan terms had occurred in any loan; confirmed the market value of the mortgaged property; and not sold any "high-risk" loans to RFC.   Id. ¶ 24.   Defendants further stated that none of loans sold were based on borrower or lender misrepresentations or fraud.   Id.

The Client Guides provide RFC with broad remedies.   The Client Guides state that any failure by Defendants to comply with the representations and warranties made will result in an

---

[2]   The general background allegations cited herein are largely identical in the six First Amended Complaints filed by RFC.

"Event of Default."  Similarly, any failure by a borrower, appraiser, broker, or other intermediary to provide accurate information is an "Event of Default," regardless of whether Defendants knew of the misrepresentation.  Id. ¶¶ 26-27.  RFC reserved the sole right to declare an Event of Default, upon which RFC could require the lender to repurchase or replace the loan. Id. ¶¶ 29-30.  The Client Guides also granted RFC indemnification for any liability resulting from a lender's breach.  Defendants agreed to indemnify RFC for all losses, damages, or other costs resulting from any breach of contract, breach of warranty, or misrepresentation.  Id. ¶ 33.

Many of the loans sold by Defendants to RFC defaulted or became delinquent.  These loan defaults, in turn, led to significant investor losses.  In selling the RMBSs to investors, RFC made required disclosures to the Securities and Exchange Commission (SEC) and also made representations and warranties to investors.  When the RMBSs failed, investors, insurers, and other interested parties filed lawsuits against RFC for selling faulty investments.  RFC alleges it was exposed to "billions of dollars" in liability.  Id. ¶¶ 37-39, 45.  In the ensuing litigation, investors and their insurers discovered that many of the loans underlying their investments had significant underwriting problems.  See, e.g., id. ¶¶ 59, 62, 64.  The paperwork for many loans was either incomplete or included inaccurate information about key aspects of the loans, such as borrower income, loan-to-value ratios, and property values.  The loans also defaulted at higher than normal rates.  See id. ¶¶ 40, 62.

In May 2012, RFC declared bankruptcy in the Bankruptcy Court for the Southern District of New York.  The dozens of lawsuits against RFC involved a balance of more than $100 billion in original loan principal.  And because RFC extended a promise to repurchase faulty loans and investments as part of its offerings, RFC had already spent millions of dollars repurchasing investments and loans.  Id. ¶ 70.  After RFC declared bankruptcy, investors and other interested

parties filed hundreds of proofs of claim.  Id. ¶ 72.  Ultimately, the bankruptcy court approved a global settlement of over $10 billion to resolve the claims against RFC.  The settlement assigned the rights and interests of RFC to the ResCap Liquidating Trust.  Id. ¶ 76.

After the bankruptcy settlement took effect in December 2013, RFC filed dozens of actions against the lenders from whom it had purchased residential mortgage loans, including the six at issue here.  RFC has alleged a breach of the Client Contracts and incorporated Client Guides against all Defendants except NBKC.  In all six cases, RFC has also alleged a claim for indemnification.

### A.  Broadview Mortgage Corporation

Broadview Mortgage Corporation ("Broadview") is a California corporation with its principal place of business in Orange, California.  Over the course of their dealings, RFC purchased "over 200" mortgage loans from Broadview, with an original principal balance in excess of $55 million.  Broadview Compl. ¶¶ 4, 14.  Broadview sold its first mortgage loan to RFC in 2001, and the last in 2007.  Id. Ex. C.

### B.  First Equity Mortgage Bankers, Inc.

First Equity Mortgage Bankers, Inc. ("First Equity") is a Florida corporation with its principal place of business in Miami, Florida.  RFC purchased "over 400" loans from First Equity, for a balance of over $72 million in original principal.  Am. Compl. [First Equity Dkt. No. 42] ("First Equity Compl.") ¶¶ 4, 14.  First Equity sold its first mortgage loan to RFC in 2003, and the last in 2007.  Id. Ex. C.

### C.  Central Pacific Homeloans, Inc., Central Pacific Bank, and Central Pacific Financial Corporation

Central Pacific Financial Corporation is a Hawaiian bank holding company with its principal place of business in Honolulu, Hawaii.  Central Pacific Finance Corporation directly

owns Central Pacific Bank, a state-chartered bank.  Central Pacific Finance Corporation also indirectly owned Central Pacific Homeloans, Inc., which in 2012 merged into Central Pacific Bank (all three together, "Central Pacific").  Am. Compl. [Central Dkt. No. 32] ("Central Compl.") ¶ 13.  From 1999 to 2007, RFC purchased "over 200" mortgage loans from Central Pacific, with a total original principal balance of over $76 million.  Id. ¶ 4, Ex. C.

### D.  Lenox Financial Mortgage Corporation

Lenox Financial Mortgage Corporation ("Lenox") is a California corporation with its principal place of business in Santa Ana, California.  Am. Compl. [Lenox Dkt. No. 33] ("Lenox Compl.") ¶ 13.  RFC purchased "over 130" mortgage loans from Lenox in 2006 and 2007, with an original principal balance total of over $65 million.  Id. ¶ 4, Ex. C.

### E.  Wells Fargo Bank, N.A.

Wells Fargo Bank, N.A. ("Wells Fargo") is a national banking association with its principal place of business in Sioux Falls, South Dakota.  Wells Fargo is the successor of entities from which RFC purchased loans, including Wachovia Mortgage Corporation (formerly "First Union Mortgage Corporation") and First Union National Bank.  Am. Compl. [WF Dkt. No. 49] ("WF Compl.") ¶ 14.  From 1992 to 2007, RFC purchased "over 7,100" loans from Wells Fargo, with an original principal balance total of over $2.2 billion.  Id. ¶ 4, Ex. C.

### F.  National Bank of Kansas City

National Bank of Kansas City ("NBKC") is a bank with its principal place of business in Leawood, Kansas.  Am. Compl. [NBKC Dkt. No. 28] ("NBKC Compl.") ¶ 14.  Between 2003 and 2005, RFC purchased "over 4,000" mortgage loans from NBKC, with a total original principal balance of $200 million.  Id. ¶ 4, Ex. C.

### III.  DISCUSSION

**A.  Motion to Dismiss Standard**

Rule 12(b)(6) of the Federal Rules of Civil Procedure states that a party may move to dismiss a complaint for failure to state a claim upon which relief can be granted.  In evaluating such a motion, the court construes the pleadings in the light most favorable to the nonmoving party, and the facts alleged in the complaint must be taken as true.  Hamm v. Groose, 15 F.3d 110, 112 (8th Cir. 1994) (citation omitted).  The complaint need not allege facts with "heightened" specificity, but it must include enough facts to move claims "across the line from conceivable to plausible."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).  A claim is plausible when the plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  Also, the court may not consider matters outside the pleadings in connection with a Rule 12(b)(6) motion, but "documents necessarily embraced by the complaint are not matters outside the pleading[s]."  Ashanti v. City of Golden Valley, 666 F.3d 1148, 1151 (8th Cir. 2012) (citation omitted).

Only one Defendant, NBKC, moves for summary judgment in the alternative to dismissal.  See NBKC's Mot. Summ. J. or Dismiss [NBKC Dkt. No. 36].  Generally, a plaintiff should have "adequate time for discovery" before a ruling on summary judgment.  In re TMJ Litig., 113 F.3d 1484, 1489-90 (8th Cir. 1997).  Nevertheless, summary judgment may be appropriate when discovery is not necessary.  For example, judgment may be appropriate where a complaint is facially time-barred or the nonmovant "merely seeks to fish for a constitutional violation."  Iverson v. Johnson Gas Appliance Co., 172 F.3d 524, 530 (8th Cir. 1999) (citations omitted).  If granting summary judgment without adequate discovery "deprives the nonmovant

of a fair chance to respond to the motion," then it is improper.  Id.  As the analysis below

indicates, RFC has, at least at this stage, stated viable claims.  Summary judgment without some

discovery would be premature, and NBKC's motion for summary judgment is denied.

## B.  Defendants' Asserted Grounds for Dismissal

As the agreement to a joint hearing suggests, the pending motions share many factual and

legal issues.  RFC's amended complaints in each action are identical except for variations for the

relevant parties and the loans at issue.  Similarly, no argument raised in the present motions is

unique to any one Defendant.  In fact, Broadview, Central Pacific, and Lenox—all represented

by the same counsel—have filed extremely similar briefs.  Given the commonality of both the

claims and defenses, the pending motions are addressed jointly in the interest of judicial

efficiency.  However, this Order addresses only the six motions at issue.  The parties' ability to

jointly or severally manage discovery and engage in further motion practice remains unaffected.

### 1.  Specificity/Plausibility

All Defendants argue RFC has failed to state plausible claims for breach of contract and

indemnification.  Essentially, Defendants argue RFC has made allegations about the "bulk" sale

of loans, but not about the individual transactions at issue.  In the complaints, RFC identifies the

total number of loans sold by each Defendant and then alleges that some unidentified portion of

these loans violated the Client Contracts.  See, e.g., NBKC Compl. ¶ 38 (alleging "many of the

loans" sold by NBKC defaulted or became delinquent); WF Compl. ¶ 70 (alleging "the mortgage

loans" as a whole failed to comply with representations and warranties).  These allegations are

insufficient, Defendants argue, because RFC has not identified which loans are in breach and

how these loans breach specific representations or warranties.  Similarly, Defendants argue RFC

has not sufficiently alleged damages because it has not identified which loans caused which

RMBSs to fail, and how the loans directly translated into liability for RFC.  As a result,

Defendants contend RFC's pleadings make it impossible for them to meaningfully investigate

RFC's claims or evaluate their own exposure to liability.

Judges in this district have disagreed to some extent about whether loan-by-loan

allegations are necessary in cases involving hundreds or thousands of loans.  Compare

Residential Funding Co., LLC v. Mortg. Access Corp., No. 13-3499, 2014 WL 3577403, at *3

(D. Minn. July 21, 2014) (Doty, J.) (finding loan-by-loan allegations not necessary to state

claim), with Residential Funding Co., LLC v. Embrace Home Loans, Inc., --- F. Supp. 2d ---- ,

2014 WL 2766114, at *5-6 (D. Minn. June 18, 2014) (Magnuson, J.) (requiring "more factual

specificity" and dismissing claims without prejudice).  Other federal district courts have

generally tolerated complaints that do not parse through voluminous re-sold loans.  See, e.g.,

Ace Sec. Corp. Home Equity Loan Trust v. DB Structured Prods., Inc., --- F. Supp. 2d ----, 2014

WL 1116758, at *12-13 (S.D.N.Y. Mar. 20, 2014).  In Ace, the court—relying on several similar

cases—held that plausible claims about bulk loan sales did not require specific allegations about

each loan at issue.  Id. at 13 (citations omitted).

RFC will not be required to plead with loan-by-loan specificity in the cases at issue here.

Requiring such specificity in cases involving hundreds or thousands of loans contravenes the

requirement of pleading a "short and plain statement" of claims.  See Fed. R. Civ. P. 8(a)(2).

Defendants correctly state that the plaintiff in Ace offered more detail than is offered here, but

even this additional detail did not identify specific loans.  See Ace, 2014 WL 1116758, at *12

(complaint alleged, but did not identify, a group of "208 Mortgage loans" as past due at the

closing date and thus in violation of the contract terms).  Further, Ace specifically held that

individual loan allegations were not necessary at the motion to dismiss stage of the case, though

loan-specific proof would be required in later stages.  Id. at 13.  Other courts addressing high-volume loan sales have similarly rejected a need for loan-by-loan allegations.[3]  See, e.g., Deutsche Alt-A Sec. Mortg. Loan Trust v. DB Structured Prods., Inc., 958 F. Supp. 2d 488, 497 & n.4 (S.D.N.Y. 2013); Ace Sec. Corp. v. DB Structured Prods., Inc., 965 N.Y.S.2d 844, 850 (N.Y. Sup. Ct. 2013), rev'd on other grounds, 112 A.D.3d 522.

Defendants unpersuasively argue specific loan allegations are necessary to give them fair notice.  Unlike in securities cases involving many thousands of pooled (and thus difficult to trace) loans, the complaints in this case address smaller sets of individually-identified loans.  Although comparing the sale of loans to the sale of physical goods somewhat over-simplifies the facts, if a buyer sued a manufacturer for selling a large number of goods with an unusually high defect rate, federal pleading standards would not necessarily require the buyer to identify in the complaint every individual product that had failed.  Here, RFC alleges Defendants served as the primary underwriters for the loans, and the complaints have at least identified the loans potentially at issue.  At this stage, Defendants have sufficient knowledge to evaluate their liability, and discovery will bring the necessary focus to specific loans.

In addition to stating sufficiently specific allegations, RFC has narrowly stated plausible claims.  RFC alleges Defendants' liability stems from their failure to properly underwrite the mortgage loans at issue.  The higher than normal delinquency and default rates of Defendants'

---

[3] Defendants, in particular Wells Fargo, also argue RFC has failed to allege violations of specific representations and warranties because RFC issued different versions of the Client Guides and RFC has not identified which versions apply.  RFC has, however, alleged that the relevant portions of the Client Guides offered the same material representations and warranties.  RFC also alleges that Defendants possessed the relevant Client Guides and thus are aware of the relevant provisions.  And, Defendants do not argue that any of the Client Contracts and incorporated Client Guides are facially invalid.  RFC's allegations are thus sufficient at the pleading stage.

loans plausibly demonstrate a failure in underwriting procedures.  Supporting this inference,

RFC alleges that investigations conducted by the loan trusts and securities investors confirmed

the defective nature of the loans.  See, e.g., Lenox Compl. ¶ 41.  And as part of RFC's

bankruptcy, parties filed numerous proofs of claim documenting defective loans.  See, e.g.,

NBKC Compl. ¶ 61.  The bankruptcy court also approved a settlement of over $10 billion

against RFC, which suggests the investments derived from faulty loans.  Together, these

allegations allow the Court to reasonably infer that at least some portion of the loans sold to RFC

by Defendants violated the terms of the Client Contracts.  Although RFC has not specifically

traced the loans at issue to the liability it faced from investors, it has sufficiently alleged a

connection for pleading purposes.  Evaluating which specific loans exposed RFC to what amount

of liability will follow in due course.

### 2. Statute of Limitations

#### a. Breach of Contract

All Defendants except Wells Fargo argue RFC's claims are untimely under the six year

statute of limitations for breach of contract.  Under Minnesota law, the statute of limitations for a

breach of contract begins running upon the alleged breach, regardless of when the breach is

discovered.  See Minn. Stat. § 541.05, subd. 1; Hempel v. Creek House Trust, 743 N.W.2d 305,

311-12 (Minn. Ct. App. 2007).  Because RFC alleges Defendants sold the loans in an initially-

defective condition, Defendants argue the statute of limitation began running when RFC

purchased each individual loan.  On that basis, Defendants argue RFC cannot pursue liability for

any loans sold before December 2007, which is six years before RFC initiated the present actions.[4]

RFC argues the statute of limitations does not bar its claims for two reasons.  First, RFC argues § 108(a) of the United States Bankruptcy Code extended the statute of limitations.  Under § 108(a), if a debtor enters bankruptcy while holding a timely legal claim, the claim remains valid and may be filed by a trustee or debtor in possession up to two years after the bankruptcy court enters the order for relief.  11 U.S.C. § 108(a); see Johnson v. First Nat. Bank of Montevideo, Minn., 719 F.2d 270, 278 n.11 (8th Cir. 1983) (holding that a debtor in possession has the same rights as a trustee under § 108(a)).  In this case, RFC argues, the Bankruptcy Court issued the order for relief on May 14, 2012, allowing RFC to seek damages for at least the loans sold on or after May 14, 2006.

Second, although RFC has conceded a cutoff date of May 14, 2006, for its breach of contract claims, RFC does not waive its claims related to earlier sales, and argues those claims are timely under a "continuing obligation" theory.  At oral argument, RFC argued that under the terms of the Client Contracts, Defendants had a continuing obligation to notify RFC about any loan deficiencies or defects.  See, e.g., Lenox Compl. Ex. B-1, § A210(A).  Because Defendants underwrote the loans, RFC argues the Court may reasonably infer Defendants knew or learned about loan problems but failed to inform RFC.  See id. ¶¶ 19-21.  Defendants' failures to notify, RFC argues, constituted continuing breaches of contract and gave rise to claims which are not time-barred.

---

[4] RFC served Broadview on December 13, 2013 [Broadview Dkt. No. 10].  RFC served First Equity, Central Pacific, Lenox, and NBKC on December 16, 2013 [First Equity Dkt. No. 6], [Central Pacific Dkt. No. 5], [Lenox Dkt. No. 5], [NBKC Dkt. No. 7].  Per Defendants' calculations, these dates would serve as the "cutoffs" for liability.

The bankruptcy proceedings extended the statute of limitations.  In their replies, Defendants essentially concede the application of § 108(a), and further concede RFC correctly determined the new "cutoff" date for liability.  Given Defendants' concession and the established law, RFC has stated timely claims for all loans sold after May 14, 2006.

Whether RFC may pursue older claims based on its "continuing obligation" theory of liability is a closer call.  The Client Contracts, using fairly general language, obligate Defendants to notify RFC of any potential Event of Default.  RFC alleges Defendants had primary underwriting responsibility, meaning Defendants collected and verified borrower information, evaluated appraisals, and conducted other diligence reviews.  From these allegations, it is relatively plausible to infer Defendants, at least in some cases, knew about deficient or improperly high-risk loans at or after the time of sale.  Accordingly, RFC's breach of contract claims as to the loans sold before May 14, 2006, will not be dismissed at this time.  However, Defendants may raise the issue of these loans at a later time.  If RFC is unable to demonstrate violations of a legally-sound continuing obligation, its claims as to these loans will be dismissed.

### b. Indemnification

Under Minnesota law, the right of indemnity "accrues when the party seeking indemnification has made payment to the injured person."  Metro. Prop. & Cas. Ins. Co. v. Metro. Transit Comm'n, 538 N.W.2d 692, 695 (Minn. 1995) (quotation omitted).  RFC argues its indemnification claims did not accrue until its $10 billion bankruptcy settlement with investors became final.  Defendants respond that indemnification by contract is separate from indemnification as an equitable remedy, and that only the latter accrues upon a final judgment or other payment.  Where, as here, the right of indemnification stems from a contract term, Defendants argue the strict six-year statute of limitations should apply.  See Lehman Bros.

Holdings, Inc. v. Evergreen Moneysource Mortg. Co., 793 F. Supp. 2d 1189, 1193-94 n.2 (W.D. Wash. 2011); Structure Mortg. Trust 1997-2 v. Daiwa Fin. Corp., No. 02 Civ. 3232(SHS), 2003 WL 548868, at *2-3 (S.D.N.Y. Feb. 25, 2003).

RFC has timely stated indemnification claims against Defendants.  Defendants cite no Minnesota authority in the statutes of limitation context for treating equitable indemnification claims differently from legal indemnification claims.  The cases cited by Defendants, including Evergreen and Daiwa, are unavailing.  In Evergreen, the court refused to allow the plaintiff to characterize its breach of contract claim as one for indemnity because there was no allegation that plaintiff had suffered any liability to a third party.  See Evergreen, 793 F. Supp. 2d at 1193-94 n.2.  Here, RFC has alleged liability to investors as a result of Defendants' sale of deficient loans.[5]  Daiwa is similarly inapposite.  In Daiwa, the court refused to toll the statute of limitations under a specific New York statute which addressed how to determine the time limit when a demand is necessary to commence litigation.  See Daiwa, 2003 WL 548868, at *2-3.  Unlike in New York, Minnesota law expressly requires final and actual liability to trigger indemnification.  Metro. Prop., 538 N.W.2d at 695.  For pleading purposes, RFC has sufficiently alleged such liability in the form of the global bankruptcy settlement.

As a matter of policy, Defendants argue that allowing a contractual indemnification clause to accrue upon a final judgment or settlement would unfairly and improperly extend the breach of contract statute of limitations.  Given the sometimes-lengthy nature of litigation, however, it is not difficult to envision situations in which a final judgment or determination of

---

[5]  As noted briefly above, RFC has adequately pled damages to survive the pending motions to dismiss.  However, at later stages in the litigation, RFC will need to demonstrate how the specific loans at issue in each action resulted in RFC's liability to investors and related parties.

third-party liability is made too late to afford a plaintiff relief.  In such situations, the plaintiff

may have little or no control over the timeliness of its indemnity claim.  Limiting contractual

indemnification strictly to the original, alleged breach of contract would deprive the plaintiff of

the benefit of its bargain.  In this case, forcing RFC to file suit for indemnification before it

actually knew the amount of its third-party liability would invite speculation and run contrary to

Minnesota law.  See Gelco Corp. v. Crystal Leasing, Inc., 396 N.W.2d 672, 675 (Minn. Ct. App.

1986) ("Generally, in contracts of indemnity for loss or damage, actual loss must be incurred

before indemnity is required.") (citation omitted).  RFC's claims for indemnification, though

based in contract, are timely.

### c.  Conditions Precedent

Defendants Broadview, Central Pacific, and Lenox argue RFC has failed to allege

performance of the two conditions precedent necessary for loan repurchase.  In the Client

Guides, Defendants agreed to repurchase loans upon an Event of Default "within 30 days of

receiving a repurchase letter or other written notice" from RFC.  See, e.g., Broadview Compl.

Ex. B-1, § A210(A).  Within 30 days of receiving such notice, the seller had the right to appeal

RFC's repurchase decision.  Id. § A210(H).  Broadview, Central Pacific, and Lenox argue that

because RFC failed to allege the satisfaction of these two requirements, RFC has not stated

plausible breach of contract claims.  Similarly, these Defendants argue the Client Guides

required RFC to provide them with notice of reimbursement 10 days before any indemnification

could be paid.

RFC has plausibly alleged its claims despite Defendants' argument.  Rule 9(c) of the

Federal Rules states, "[i]n pleading conditions precedent, it suffices to allege generally that all

conditions precedent have occurred or been performed."  In the complaints at issue, RFC alleges

it performed all of its obligations to Defendants, and "all conditions precedent to the relief

sought in this action, if any, have been satisfied."  See, e.g., Broadview Compl. ¶ 35.  Assuming

the conditions precedent apply, RFC's allegations suffice at the pleading stage.  See, e.g.,

Residential Funding Co., LLC v. Wells Fargo Bank, No. 13-cv-3513 (D. Minn. June 24, 2014)

(transcript for motions to dismiss hearing) (accord); Residential Funding v. Mortg. Access, 2014

WL 3577403, at *4; Residential Funding v. Embrace, 2014 WL 2766114, at *7; see also Brooks

v. Monroe Sys. for Bus., Inc., 873 F.2d 202, 205 (8th Cir. 1989) ("For a plaintiff to properly

plead performance of conditions precedent, 'it is sufficient to aver generally that all conditions

precedent have been performed or have occurred.'") (quoting Fed. R. Civ. P. 9(c)).

### d. Standing/Right to Sue

Finally, Defendants First Equity and NBKC argue RFC lacks standing to enforce the

Client Contracts.  Reviewing publicly-filed documents, First Equity and NBKC argue RFC

assigned "all of its right, title and interest," including its rights in the Client Contracts, to the

loan trusts used to pool and sell the RMBSs.  See Shalia Sakona Decl. [First Equity Dkt. No. 68]

Ex. C (Home Equity Loan Purchase Agreement).  As a result, Defendants argue, RFC no longer

has the right to enforce the Client Contracts for breach of contract or for indemnification.  In

response to NBKC's motion, RFC submits an assignment agreement with a loan trust, in which

RFC apparently retained its rights under the Client Contracts.  Jessica J. Nelson Decl. [NBKC

Docket No. 42] Ex. A.  In an attempt to preclude this agreement's application, NBKC argues

"Residential Funding Corporation" was listed as party to the agreement, and not Plaintiff

"Residential Funding Company, LLC."

As these arguments demonstrate, the issue of RFC's right to enforce the Client Contracts

goes beyond RFC's allegations.  Whether RFC assigned away or retained its rights in the Client

Contracts will depend on the discovery and evaluation of the relevant agreements.  Similarly,

whether RFC is the proper entity to enforce such agreements will require an evaluation of

evidence beyond the pleadings.  Defendants may, at a later point in these cases, demonstrate

RFC lacks the right to enforce the Client Contracts.

## IV.  CONCLUSION

Based upon the foregoing, and all of the files, records and proceedings herein, **IT IS**

**HEREBY ORDERED** that:

1.   Defendant Broadview Mortgage Corporation's Motion to Dismiss [Civil No. 13-3463, Docket No. 42] is **DENIED**.

2.   Defendant First Equity Mortgage Bankers, Inc.'s Motion to Dismiss [Civil No. 13-3473, Docket No. 56] is **DENIED**.

3.   Defendants Central Pacific Homeloans, Inc., Central Pacific Bank, and Central Pacific Financial Corporation's Motion to Dismiss [Civil No. 13-3476, Docket No. 37] is **DENIED**.

4.   Defendant Lenox Financial Mortgage Corporation's Motion to Dismiss [Civil No. 13-3495, Docket No. 38] is **DENIED**.

5.   Defendant Wells Fargo Bank, N.A.'s Motion to Dismiss [Civil No. 13-3521, Docket No. 60] is **DENIED**.

6.   Defendant National Bank of Kansas City's Motion for Summary Judgment or to Dismiss [Civil No. 13-3528, Docket No. 36] is **DENIED**.

BY THE COURT:


_____s/Ann D. Montgomery_____
ANN D. MONTGOMERY
U.S. DISTRICT JUDGE

Dated:  August 19, 2014.